```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
A.J. HEEL STONE, L.L.C.,            :
                                    :
        Petitioner,                 :
                                    :
        -against-                   :
                                    :
EVISU INTERNATIONAL, S.R.L.,        :
                                    :
        Respondent.                 :     03 Civ. 1097(DAB)
------------------------------------x     MEMORANDUM & ORDER
A.J. HEEL STONE, L.L.C.,            :
                                    :
        Turnover Petitioner,        :
                                    :
        -against-                   :
                                    :
PETER JAMES HAMILTON CAPLOWE        :
and BESTFORD (HONG KONG) LTD.,      :
                                    :
        Turnover Respondents.       :
------------------------------------x
```
DEBORAH A. BATTS, United States District Judge.

Petitioner A. J. Heel Stone, L.L.C. ("Heel Stone") brought a Petition to Confirm Arbitral Award, seeking confirmation of an arbitration award rendered by the International Chamber of Commerce, International Court of Arbitration ("ICC"), sitting in Paris, France, against Evisu International S.r.L., now known as Centro Moda Veneto, S.r.l. (hereinafter referred to as "EIS"). The Court entered default judgment against EIS, granting judgment of $2,311,009.38 plus interest, and €16,863.70 plus interest to Heel Stone.

Unable to enforce this award against EIS, Heel Stone has filed an Amended Verified Second Turnover Petition (hereinafter

referred to as "Second Petition" or "2d Pet.") before this Court against Respondents Peter James Hamilton Caplowe ("Caplowe") and Bestford (Hong Kong) Ltd. ("Bestford"). In the Second Petition, Heel Stone sets forth five claims for relief: fraudulent conveyance, alter ego liability, successor liability, constructive trust and disgorgement. Respondents Caplowe and Bestford have filed a Motion to Dismiss based on the principles of international comity, and on Fed. R. Civ. P. 12(b)(6) and 9(b) for failure to state a claim and for failure to plead fraud with particularity.[1] Petitioner opposes all motions.

For the following reasons, Respondents' Motion to Dismiss is DENIED in part and GRANTED in part.

I.  BACKGROUND

The following facts are drawn from the Court's records of the procedural history of this case, the Second Petition and exhibits attached to it.

---

[1] By letter, dated April 27, 2006, Petitioner informed the Court that Respondent's motion to dismiss on the basis of international comity is now moot as the Italian bankruptcy proceeding is now in its final stages. Accordingly, the Court will not address this basis for dismissal.

2

A. Factual Background

"Evisu" is a trademark registered in the United States primarily used in connection with certain lines of apparel and accessories. Hidehiko Yamane ("Yamane") created the brand in the 1990's. During the 1990s, Yamane and Respondent Caplowe met and decided to work together to market and distribute the "Evisu" brand outside of Japan. (2d Pet. ¶¶ 9-12.) In or about 1998, Caplowe formed Evisu International, S.r.l., now known as Centro Moda Veneto, S.r.l. ("EIS"), for the purpose of marketing and distributing the "Evisu" brand outside Japan. (Id. ¶ 13.) At all relevant times, Caplowe owned a majority and controlling interest in EIS. (Id. ¶ 67.)

In or about May, 1999, EIS was granted a renewable five-year license to manufacture and distribute "all types of apparel, footwear and accessories" under the "Evisu" trademark for all territories around the world excluding Japan.

On June 4, 1999, EIS entered into a distribution agreement with Petitioner Heel Stone ("Distribution Agreement"), whereby Heel Stone obtained the right to distribute certain "Evisu" products in the United States for a five-year period.

In May 2001, Dowluck entered into another license agreement for use of the "Evisu" mark, this time with Bestford, which was nearly identical to the license granted EIS in 1999. Bestford,

3

like EIS, is owned and operated by Caplowe.  (Id. ¶¶ 21, 42, 44, 62.)

On September 19, 2001, EIS terminated its Distribution Agreement with Heel Stone.  In November of that year, EIS entered into a new exclusive distribution agreement with Ben Sherman USA ("Ben Sherman").  In response to the termination of its Distribution Agreement, Heel Stone unsuccessfully sought to enjoin the termination in New York State Supreme Court.  Heel Stone then initiated arbitration proceedings before the ICC in Paris, France.

Prior to December, 2002, the "Evisu" trademark was registered in Yamane's name; in or about December, 2002, Yamane licensed all rights in and to the "Evisu" trademark to a company called Dowluck.  It appears that Caplowe acted as "Attorney in Fact" to Dowluck.  (Id. ¶¶ 42, 44, 62.)

On February 12, 2003, the ICC awarded Heel Stone approximately $2.5 million, finding that EIS had "wrongfully terminated" its agreement with Heel Stone.  (Id. ¶ 48.)

On December 13, 2002, Bestford entered into an exclusive distribution agreement with Ben Sherman that largely mirrored the distribution agreement made between EIS and Ben Sherman.  On February 28, 2003, immediately following the arbitration award and pursuant to a six-month termination notice sent by Dowluck to

EIS in August 2002, Dowluck terminated EIS's license agreement to distribute Evisu products. In April, 2003, without satisfying the arbitration award in favor of Heel Stone, EIS was declared bankrupt by an Italian court. EIS currently has insufficient assets to satisfy the judgment of this Court. (Id. ¶ 55.)

B. Procedural Background

This case was originally before the Court as a Petition to Confirm Arbitral Award by Heel Stone against EIS. With that Petition, Heel Stone requested an Order to Show Cause for attachment and temporary restraint of assets of EIS, purportedly in the possession of Ben Sherman. The Court issued the Order to Show Cause on February 21, 2003.

On August 6, 2003, the Court confirmed the ICC Arbitration Award and granted judgment against EIS in the amount of approximately $2.5 million.

On September 2, 2003, Heel Stone filed a Verified Turnover Petition against Ben Sherman. A Verified Second Turnover Petition was filed on November 18, 2003 against Peter Caplowe, Bestford, Ben Sherman and a number of other entities. On December 19, 2003, the Court issued an Order to Show Cause, directing Respondents of the Verified Second Turnover Petition to appear for a hearing on January 15, 2004.

At the conclusion of the hearing, the Court granted Heel Stone ten days to determine the proper Respondents and to file an Amended Verified Second Turnover Petition. Heel Stone filed the Amended Verified Second Turnover Petition against Caplowe and Bestford. In that Petition, Heel Stone seeks to recover monies owed to it by EIS in connection with the ICC arbitration. EIS is currently being liquidated in bankruptcy proceedings in Italy, where an Official Receiver has been appointed to oversee the proceedings.

Respondents Caplowe and Bestford have moved to dismiss the Amended Verified Second Turnover Petition.

## II. DISCUSSION

Respondents move to dismiss the Amended Second Verified Turnover Petition on the grounds that the Petition fails to state a claim upon which relief can be granted, and that Petitioner has failed to allege its claims with particularity, as required by Fed. R. Civ. P. 9(b).

A. Legal Standard for Motion to Dismiss

In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the

6

plaintiff." Bolt Elec., Inc. V. City of New York, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). A court's review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Berhneim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Cooper v. Park, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (citations omitted).

When alleging fraud, a plaintiff must comply with Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity."

B.  Fraudulent Conveyance

Respondents state that dismissal of the fraudulent conveyance claim is warranted because there was no conveyance of EIS' rights and assets to Bestford.  In addition, Respondents argue that Petitioner has failed to comply with the particularity requirements of Fed. R. Civ. P. 9(b).

Fraudulent conveyance under New York law is governed by the New York Uniform Fraudulent Conveyance Act ("UFCA"), N.Y. Debt. & Cred. Law §§ 270-281.[2]  The UFCA "is a set of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by the transfer of a debtor's property."  HBE Leasing Corp. v. Frank, 48 F.3d 623, 634 (2d Cir. 1995).  Petitioner does not specify the provision of the statute under which it is bringing its claim; however, it is clear from the Petition that Petitioner is alleging Caplowe made

---

[2] Although Petitioner does not specifically allege its fraudulent conveyance claim under the New York Fraudulent Conveyance Statute, or which provision, it is clear that Petitioner's fraudulent conveyance claim falls under this statute, as all the cases to which the parties cite concern provisions of the New York Fraudulent Conveyance Statute.

a conveyance made with intent to defraud under § 276 of N.Y. Debt. and Cred. Law, and not fraudulent conveyances under §§ 273-276 of N.Y. Debt. and Cred. Law.[3]  Specifically, Petitioner contends that "Caplowe engineered the foregoing transactions [namely, the ceasing of business under the name of EIS and conducting all "Evisu" business through Bestford] as a sham to hedge against an adverse result in the arbitration."  (Pet. ¶ 47.)  Petitioner also sets forth "badges of fraud" to support an inference of fraudulent intent.  (Id. ¶ 62.)

Section 276 of New York's Debtor and Creditor Law states that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

A party seeking to set aside a fraudulent conveyance under § 276 must plead actual intent to defraud with the particularity

---

[3]  Intent to defraud is not an element of fraudulent conveyances under N.Y. Cred. & Debt. Law §§ 273-275.  In order to state a claim for fraudulent conveyance under those provisions, a plaintiff must allege that the conveyance was made without fair consideration and that (1) the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer (§ 273); (2) as a result of the transfer, the transferor is left with unreasonably small capital to conduct its business (§ 274); and (3) as a result of the transfer, the transferor intends or believes that it will incur debt beyond its ability to pay (§ 275).  See N.Y. Debt. & Cred. Law §§ 273-275.

required by Fed. R. Civ. P. 9(b). However, because direct proof of fraudulent intent is difficult to obtain, such intent may be inferred from circumstantial evidence, such as the inadequacy of consideration received, the close relationship between the parties to the transfer, information that the transferor was insolvent by the conveyance, suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened, or the use of fictitious parties. Eclaire Advisor Ltd. as Trustee to Daewoo International (America) Corp., 375 F.Supp. 2d 257, 268-69 (S.D.N.Y. June 15, 2005). These inferences are generally referred to as "badges of fraud." Id.

Moreover, "It is well established that multilateral transactions may under appropriate circumstances be 'collapsed' and treated as a single transaction for analysis under the UFCA." HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1061 (2d Cir. 1995) (citing Orr v. Kinderhill Corp., 991 F.2d 31, 35-36 (2d Cir. 1993)). To invoke this rule, however, Petitioner must demonstrate that Respondents had "actual or constructive knowledge of the entire scheme that renders [their] exchange with the debtor fraudulent." Id.

Based upon the Petitioner's allegations, which the Court views in the light most favorable to Petitioner, the Court finds

that fraudulent conveyance has been adequately pled, and with particularity.[4] The series of transactions between Dowluck, EIS and Bestford, to the detriment of Heel Stone, can be construed as a series of transaction which when collapsed, amount to a fraudulent conveyance of EIS's rights to make and distribute "Evisu" goods. Moreover, Petitioner has adequately identified "badges of fraud" that would indicate the fraudulent intent of Respondent Caplowe. (2d Pet. ¶ 62.)

C. Alter Ego Liability

In its alter ego liability claim, Petitioner claims that both Caplowe and Bestford are jointly and severally liable to the same extent as EIS for the unpaid portions of Petitioner's judgment against EIS, on the theory that Caplowe dominated and controlled both companies.

---

[4] Respondents cite the transcript in support of their statement that at the January 15, 2004 hearing, "the Court found . . . that Heel Stone had failed to demonstrate that [EIS'] license had been transferred to Bestford." (Resp. Mem. Law at 11.)

The Court did state at the hearing that "It is not clear to the court that the petitioner would ultimately succeed on the merits" and hence, declined to sign the attachment requested by Petitioner. However, in a motion to dismiss, the Court's inquiry is not whether Petitioner will succeed ultimately on the merits, but rather, whether Petitioner's claims are sufficient, reading the allegations in the light most favorable to Petitioner.

Two elements must be pleaded to state a claim of alter ego liability: (1) that the person exercises such dominion and control with respect to the transaction attacked that the corporation had no separate will of its own, and (2) that the domination and control was used to commit a fraud or wrong against the [Petitioner]. <u>American Protein Corp. v. AB Volvo</u>, 844 F.2d 56, 60 (2d Cir. 1988).[5]

It is clear that Petitioner has adequately pled the requisite facts necessary to satisfy the pleading requirements of an alter ego liability claim. As Petitioner points out in its Memorandum of Law, it has specifically, and with particularity, alleged dominion and control by Caplowe of EIS and Bestford, and that such domination and control was to commit a fraud against Petitioner. Accordingly, Respondents' Motion to Dismiss the Alter Ego Liability claim is DENIED.

D. Successor Liability

Successor liability is assumed if: "(1) the buyer expressly or impliedly assumed the seller's tort liabilty, (2) there was a

---

[5] Although the law of the state of incorporation typically governs alter ego claims, "where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." <u>American Fuel Corp. v. Utah Energy Development</u>, 122 F.3d 130, 134 (2d Cir. 1997).

consolidation or de facto merger of seller and buyer, (3) the buyer was a mere continuation of the seller, or (4) the transfer was entered into fraudulently to escape such liability." Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P., 392 F.Supp. 2d 621, 627 (S.D.N.Y. 2005).

Because the Court has found that Petitioner has adequately pled fraudulent conveyance, Respondents' Motion to Dismiss the Successor Liability claim is DENIED.

E. Constructive Trust and Disgorgement

"A constructive trust may be imposed where property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest." Jones v. Dana, No. 06 Civ. 159, 2006 WL 1153358, at * (S.D.N.Y. May 2, 2006) (citing Majer v. Schmidt, 564 N.Y.S. 2d 722 (1st Dept 1991)). Relevant factors to be considered by the Court when determining whether a constructive trust should be imposed include "the existence of a confidential or fiduciary relationship, a promise, a transfer made in reliance on that promise, and unjust enrichment." Id. (citing Simonds v. Simonds, 408 N.Y.S. 2d 359 (N.Y. 1978)); see also Weizmann Institute of Science v. Neschis, 421 F.Supp. 2d 654, 690 (S.D.N.Y. 2005).

Petitioner has already obtained redress for the wrongful

13

termination of its agreement with EIS through the arbitration award. Petitioner has stated throughout its Petition that Respondent has fraudulently conveyed the assets and business of EIS to Bestford, in part to avoid the arbitration judgment. EIS' business and assets are not the property of Petitioner; what is owed to Petitioner is the sum equal to the arbitration award. Accordingly, the Court finds that constructive trust and disgorgement are not appropriate remedies in this case.

Accordingly, Petitioner's claims for relief of constructive trust and disgorgement are DISMISSED with prejudice.

### III. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss the Second Amended Verified Turnover Petitioner is DENIED in part and GRANTED in part. Petitioner's Fourth and Fifth Claims for Relief are DISMISSED with prejudice. Respondents shall file their Answer to Petitioner's remaining Claims for Relief in the Second Amended Verified Petition within thirty (30) days of the date of this Order.

SO ORDERED.

DATED: New York, New York
       May 25, 2006

_Deborah A. Batts_
DEBORAH A. BATTS
United States District Judge